\*RICHARD DOUGLAS *v.* JOHN WADDLE.        [413

*Indorsers—Securities.*

Indorsers of promissory notes, indorsed for the use and accommodation of the drawer, are co-securities, and the last indorser can not recover more than a contributable share against a previous indorser.

THIS was an action of assumpsit. The declaration was by the indorsee of a promissory note against his immediate indorser; it contained also the common money counts. The cause was tried in the supreme court of Ross county, and a verdict given for the defendant. A motion was made for a new trial, and the decision of the motion referred to this court for decision.

The facts were these: On the 6th of October, 1818, a note, drawn by James Barnes, payable to the plaintiff, Douglas, and indorsed by Douglas and the defendant, Waddle, was discounted by the office of discount and deposit of the Bank of the United States at Chillicothe, where it was made payable, and the proceeds drawn upon the check of Waddle, the last indorser, and carried to the account of Barnes, the drawer. Though treated in form as a real note of business, it was, in fact, for the accommodation of Barnes, the drawer. Four notes were successively drawn, indorsed, and

discounted in the same manner, and the proceeds of each successive note applied to discharge the amount due upon the one preceding it. A note was then drawn by Barnes, payable to the defendant, Waddle, and indorsed by him and one Hoffman, discounted and applied as before. Four notes were again successively drawn by Barnes, payable to Waddle, and indorsed by Waddle and the plaintiff Douglas, and the proceeds applied in the same manner. The last of these was the note in question, upon which suit was brought by the bank, under the statute against drawer and indorsers as co-defendants, and judgment and execution had, upon which the plaintiff and defendant each paid half the amount, and the plaintiff claiming that the defendant was liable to him for the amount by him paid, obtained the note, struck out his own indorsement, and brought this suit.

BRUSH and FITZGERALD, and DOUGLAS, for the plaintiff:

The right of the plaintiff to recover depends upon long-established and well-settled principles of mercantile law. *So soon as a promissory note is indorsed, it assumes the same character, and becomes subject to the same rules, as a bill of exchange. The indorser is the drawer, the maker of the note the acceptor, and the indorsee the payee, or person entitled to receive the money. This was settled in the case of Heylen and others *v.* Adàmson, 2 Burr. 676, and has since been strictly adhered to. Upon this state of the law Douglas, to whom Waddle indorsed the note, was entitled to recover the amount from Waddle, the indorser. That he himself sold the note, and was afterward compelled to pay it and take it up, does not alter his rights.

The ground of defense taken in this case is: That this was an accommodation note, drawn by Barnes, and indorsed by the plaintiff and defendant for his accommodation; that as between them it was not a real transaction; no consideration was paid by either to the other; that though it assumed the form of a real making and selling a note, it was, in fact, but an agreement that the indorsers should become securities for the drawer. It is, however, well settled, both in England and America, that in an action by the holder of a note or bill, against drawer, acceptor, or indorser, the fact that the defendant made, accepted, or indorsed the paper for the accommodation of another, without consideration, can not be set up as a defense. Charles *v.* Marsden, 1 Taunt. 224;

Douglas *v.* Waddle.

Smith *v.* Knox, 3 Esp. 46; Wiffen *v.* Roberts, 1 Esp. 261; 2 Caine, 343; 7 Johns. 361; 18 Johns. 327; 14 Cranch, 141; 2 Litt. 174.

The statute of this state, authorizing a joint suit against drawer and indorsers, is supposed so to operate as to make them principal and securities; and the decisions under it, with respect to execution going against principal and surety, it is contended, must be founded on that doctrine. This inference is not a just one, as it relates to this case, because the statute was unnecessary, if without it the holder of the paper could consider drawers, acceptors, and indorsers, as joint debtors, against whom he could proceed jointly. This is pretended by no one. Besides, the statute distinctly contemplates a separate defense. In Kentucky they have a similar statute, and there it has been expressly adjudged that one indorser can not have contribution against another, because their undertaking is not joint but several. 2 Litt. 174.

*It is urged that there is a *general understanding* throughout [**415** the state, among those who indorse accommodation paper, that they are joint securities, and that this *general understanding* constitutes the law. *General understanding* is certainly a new agent in legislation—a new source to supply a rule of civil conduct in our country. Whatever matter may be given in evidence to defeat a recovery, may generally be pleaded in bar to the action; and if *general understanding* may make the law in one case, it may in another. Establish the doctrine as now contended for, and we must hereafter add a new title in our treatises on pleading—the title of "*general understanding.*" We must have a plea of the *general understanding*, and a series of decisions establishing the state of facts which shall constitute this *general understanding*, and declaring the rules of evidence by which it shall be proven. Certainly this notion of a rule of law, founded upon *general understanding*, is too absurd to be seriously considered. It bears no analogy to the doctrine of general or special customs, which, in a few cases, are held to constitute a peculiar law.

But it is denied that any such *general understanding* prevails in the state. None such was proved on the trial of the cause. The attempt to prove it was overruled by the court, which, of itself, is decisive that it can have no just weight in deciding the motion under consideration.

The principle contended for must, in its application to all the various subjects connected with it, subvert the whole system of

Douglas *v.* Waddle.

mercantile law in relation to bills of exchange and promissory notes.

It subverts the rules of evidence, because it permits parties to prove facts inconsistent with the legal interpretation of their contracts, as reduced to writing. The note and the indorsements considered, as the writings themselves import, constitute several separate undertakings to pay money, and unless explained by the proof of other facts, must be so understood and adjudicated upon. Proof is let in that the whole was an affair for the accommodation of one of the parties, and by this proof the effect of the writings is totally changed. They are no longer separate contracts, founded upon separate dealings, but are one joint contract, founded upon 416] a single transaction, and the consequent rights of the *parties are placed upon a different foundation. It is not easy to foresee what may result from an innovation like this upon well-settled usages.

It must affect the certainty and uniformity of character hitherto attached to these instruments. They mean one thing in the hands of one set of men, and another thing in the hands of another set. And their character must depend upon parol proof whether the holder was a party to the original transaction, and whether that was one of accommodation or otherwise. The perjury of a single witness may thus render a genuine note or bill of totally different value to him who holds it from what its face imports, and from what he may have received it for in market.

If, as between the original parties, an accommodation bill or note is but an agreement of some to become security for others, it must, upon principle, retain this character in the hands of all who receive it, with notice of that fact, and be subject to all the doctrines in relation to principle and surety, whatever they may be.

An accommodation note, drawn and indorsed in this state by one indorser, and in the State of New York by another, must be subject to the operation of different rules of liability. If the indorser in New York can reach his previous indorser, in the tribunals of that state, he will be liable, but not liable if brought before our own courts.

It is well understood that the undertaking of the indorser of accommodation, as well as real paper, is conditional. His agreement is that he will be liable if the holder demand payment at the

proper time and place, and in a proper time and manner notify him that payment is not made. Two difficulties in relation to this must be introduced by the doctrine now insisted upon. The undertaking to the real holder of the note is totally different from the agreement between the parties. And their respective liabil· ities must depend, not upon their own contract, but upon the act of the holder. If there be more than one indorser, and the holder fail to notify one of demand and non-payment, so as to charge him, the joint contract is put an end to. The indorser charged can have no redress against his co-indorser for contribution, and if the holder choose to charge the first indorser by a notice, no act of his can subject the second *indorser. Indeed, it is not [417 perceived, even if all the indorsers be charged properly, if the holder choose to collect the amount from one, how the others are to be redressed.

When the parties intend to make a joint contract and a joint· liability, it is easy to do so. Had that been the intention here, the note could have been drawn payable to both indorsers, and then a joint indorsement would have created a joint liability. But when the written contract of the parties creates, in law, separate. and not joint liabilities, there can be no reason for making a new contract between them, more especially when to do it, introduces a new doctrine, the consequences of which can not be anticipated, and the very introduction of which is a subversion of an existing rule of long-established authority in the countries from which we derive our maxims and rules of jurisprudence in other cases.

KING and LEONARD, for the defendant:

The single question to be decided in this case is, whether indorsers on accommodation paper are, as between themselves, to be considered co-securities, or whether they are separately liable as well to each other, in their order of indorsement, as to the holder of such paper.

It is not admitted that this question has been anywhere distinctly decided; although it is evident, from the cases cited, that points have been ruled which seem to involve the decision that no distinction exists between accommodation and other paper. But the opinion seems to have been adopted as a matter of course, without inquiry as to the foundation upon which it rests.

In England, the law merchant is a peculiar branch of their mu-

nicipal code. It is founded entirely upon customs prevalent among merchants. These customs have been, from time to time, found by the verdicts of juries, as different questions arose, and after having been found upon proof, in a few cases, have been received, in other cases, as established without proof. The days of grace allowed upon bills and notes is of this character, so is the time of making demand and protest, and the manner of giving notice to indorsers of non-payment. On this subject it has been decided by our own Supreme Court, that a custom of making this demand 418] *and giving notice on the fourth day, prevalent in the Bank of Chillicothe, was binding upon those who transacted business in that bank, or in other banks at that place, although this custom or mode of doing business was not according to the general law.

We all know that this decision did not and could not proceed upon the old common law doctrine of custom, which is a different thing from the custom of merchants. The latter means, in fact, nothing more than a *general understanding* as to the mode of transacting a certain business by those engaged in the transaction of that business. This *general understanding* is considered as entering into, and forming a part of their contracts, in reference to which they are to be interpreted and enforced.

The forms of drawing and indorsing these instruments are not of the inflexible character assumed by the opposite counsel. If an indorser be sued, it is competent to prove that the paper was drawn for his accommodation and the proceeds received by him, to answer an objection that notice was not given. It is only a different application of the same principle to receive evidence that the paper was indorsed by all the indorsers as accommodation paper.

The understanding upon this subject, among those who have indorsed, has been general. Parties who have become liable as indorsers have apportioned the loss among themselves without controversy. In this very case it was so apportioned. The plaintiff then so understood the law. His suit is founded upon a new *understanding* of it.

His first *understanding* accords with the strictest rules both of justice and equity. Where two persons lend their names to a mutual friend, one ought not to bear the whole loss. More especially a technical rule of law ought not to be got up to fix that loss upon him, contrary to the mutual *understanding* of all the parties.

426

Douglas v. Waddle.

We do not ask to subject a particular contract, to be interpreted by a *general understanding*, in relation to such contracts. We ask · only to have this particular contract interpreted as the parties themselves understood their respective liabilities, and we introduce the *general understanding* to illustrate and strengthen the position we take.

*The eighth section of the act regulating judgments and [419 ·executions, passed February, 1820, directs that "where judgment is rendered upon any bond, sealed bill, promissory note, or other instrument of writing, in which two or more persons are jointly or severally bound, if it shall be made appear that one or more of said persons signed the same as surety or bail for his co-defendant, it shall be the duty of the clerk entering judgment thereon to certify which is principal debtor, and which is surety, and the act further provides that, in such case, the property of the principal shall be exhausted, before that of the security shall be taken in execution."

It has been again and again decided that under this law, indorsers of accommodation notes are sureties, not liable to have their property seized in execution until that of the principal is exhausted. It is the settled practice, not only in the state courts, but in the Circuit Court of the United States. And in that court it was sharply contested by the counsel for the Bank of the United States. The judge justly remarked he could not blink so hard as not to see the real nature of the transaction, because the forms of doing business were of different import. If the plaintiffs are right, this practice is wrong. As it has universally obtained, no better evidence could be adduced of the *general understanding*. For it could not have obtained, had a different sentiment prevailed.

The inconveniences suggested by the plaintiff's counsel are more imaginary than real. They are founded upon adjudications as to real business paper, where the making and the indorsing were in fact separate contracts, arising upon separate considerations. To these they are applicable, and with respect to these it would be unsafe to attempt innovations. A different *understanding* has prevailed, and been the basis of very extensive credits and dealing. No mischiefs have resulted. And it is not probable that a decision declaring the law to be as parties have understood it, and· acted upon it, will introduce mischief—a different decision would be likely to introduce many mischiefs, by leading to the

427

ripping up of settlements made, and disturbing rights long adjusted.

**420]**　*By the COURT:

The principle that the indorsee of a negotiable promissory note may sustain an action against a previous indorser, upon the indorsement alone, without showing other consideration, was originally settled upon sound and correct notions of justice. And, in its application to a proper case, it is a rule which ought not to be disturbed. A promissory note was created as evidence of a real debt due from the maker to the payer. It was received and held as such. If transferred or indorsed by the payee, the indorsement was a real separate contract between the indorser and indorsee of the note; the latter received it for a consideration paid, and hence the indorsement, like the making, was held to be evidence of a debt due from the indorser to the indorsee. The same fact attended every subsequent indorsement, and attached to it the same consequences. As between parties to a note thus made and indorsed, the principle maintained by the plaintiff is well applied. But where the transactions of the parties are, in fact, of a totally different character, neither the reason of the rule, nor the justice of the case, admits its application.

The form of transacting a real business was in time used for the creation of an artificial credit. Notes were made, indorsed, and thrown into the market for the purpose of raising money for one of the parties only, the others being in fact securities, and receiving nothing whatever upon their indorsements. It is urged that in England and in some of our sister states, this species of notes is placed upon exactly the same foundation with real paper, and that no distinction can be safely made between the two classes. So far as it relates to the interest of a *bona fide* holder, who has advanced his money, this is right and just; and so far the rule rests upon authority. There is no decision adduced by which it is adjudged that this rule is inflexible in its application to the original parties who made and indorsed the note, and between whom nothing was paid. And, if a direct authority did exist in another country, we should feel ourselves bound to examine the subject upon principle before we adopted it here.

In this country the parties to this description of paper usually **421]** understood their relation to be that of principal *and security, and upon this understanding they have generally acted, both

in creating the paper, and in adjusting their liabilities upon it. Were it fully admitted that no rule of law could be founded upon *general understanding*, the admission would have no bearing in this case, where the inquiry is, whether the form of creating a note, and putting it into market, shall absolutely settle the rights of those concerned, contrary to their own understanding of the matter. When the litigation is between the original parties, we are of opinion that the form of making and indorsing a note does not preclude an inquiry as to what the parties intended, and what was the real transaction between them. And the propriety of making this investigation is the more manifest from the well-known fact, that many more notes like this are created artificially in this country than are made and indorsed upon actual dealings between the parties.

The real principle upon which the plaintiff proceeds, is that he purchased the note from Waddle and paid him a consideration for it. He must be the owner of the note or he has no right to recover in an action founded upon an indorsement on it. It appears from the evidence, that Waddle, when he indorsed the note, delivered it to Barnes, the drawer, who took it to the plaintiff and obtained his indorsement. When the note was handed to Douglas it was not for the purpose of vesting in him any property. Suppose he had retained it then and brought this action; would any lawyer contend that parol evidence to explain when the note was made, and how Douglas became possessed of it, could not be received? It is assumed that no lawyer would attempt this, and if Douglas had not then an interest in this note, upon which he could sustain this action, how, and when did he acquire such an interest? He could not acquire this interest by subsequently paying half the money due upon it; for that payment only entitled him to demand the amount paid from him for whom it was made; it could invest him with no new interest in the note. It is therefore clear, that if Douglas can maintain an action upon the indorsement, it must be in consequence of the interest acquired in the note by Barnes' handing it to him for indorsement; and that he then acquired no interest *upon which he could maintain [422 an action, admits, we think, of no doubt. He knew that Waddle did not, in fact, own the note, but had indorsed it for the accommodation of Barnes, as a security. He knew that he himself indorsed it for the same purpose, and not as owner; it was intended to pay

;a debt due from Barnes, who, and not Waddle, was the person to be benefited. Douglas himself never had a beneficial interest in the note; and the money paid by him was paid for Barnes, not for Waddle. He therefore can have no action against Waddle for the amount.

Cases have occurred without number in which two or more persons have indorsed notes to be discounted in bank, when neither would have indorsed alone, because no one of them was willing to risk the payment of the whole debt; and when the requisite number of indorsers have been obtained, they have paid no attention to the order in which they placed their names on the paper. Such was the fact in this very case. This could only arise from a distinct understanding among the parties, that the indorsers stood in the relation of sureties to each other.

By the nineteenth section of the act regulating judgments and executions, we are directed to receive parol proof when one or more of the defendants signed the note as securities, and it is made the duty of the clerk, upon such proof, to certify which of the defendants is principal debtor, and which is security, in order that the property of the first may be exhausted before execution can be levied on the latter. We have uniformly understood this law as applying to the indorsers upon accommodation notes, and have so applied it, and this could be done upon no consistent principle but that of considering such indorsers as securities.

The defendant, under this statute, might, when judgment was rendered against the drawer, the plaintiff and himself, have applied to have the certificate made that he, with the plaintiff, were sureties. Upon the proof in this cause the certificate must have been made. It would be absurd to consider and treat them as securities as beween them and the creditor; but between themselves as parties to separate contracts.

423] *Where the original transaction was in its character and object that of principal and security, the court, as between the original parties, will so consider them, no matter what form may have been given to it; and where there are two or more indorsers upon an accommodation note, all of whom indorsed before the note became operative by being transferred to some person not a party, for value received, and all of whom are charged by notice of demand and non-payment, they shall be treated as co-securities, and contribution shall be made between them as such. In this

relation the plaintiff and defendant stood to each other. Each has paid his half upon the principle of being joint securities. The plaintiff can not recover in this action.

With respect to the various difficulties urged by the plaintiff's counsel as necessarily resulting from this decision, it appears to the court that the opposite counsel have sufficiently answered them. If, however, the salutary and just principle upon which this decision is predicated can not be extended to every case without too great innovation upon established doctrines, the only consequence will be, that it must be limited to cases situate as this. It will be time enough to meet these suggestions when a case arises in which they are presented for determination.

See Renner *v.* Bank of Columbia, 9 Wheat. 582.